MARK PETERSON DENTAL LABORATORY, INC., APPELLEE, *v.* KRAL, APPELLANT.

(No. 10849—Decided May 18, 1983.)

*Ms. Patricia Ritzert,* for appellee.

*Mr. Samuel A. Yannucci* and *Mr. Rex E. Sager,* for appellant.

GEORGE, J. This case presents an appeal from the trial court's grant of a judgment against Dr. Bruce M. Kral individually and not against his solely owned professional association, Dr. Bruce M. Kral, D.D.S., Inc.

Two assignments of error have been raised challenging the sufficiency of the evidence. These were briefed together and will be treated likewise.

### Assignments of Error

"I. The trial court erred in denying defendant's motion for directed verdict at the close of plaintiff's case and again at the close of all the evidence.

"II. The judgment of the trial court is manifestly against the weight of the evidence and is contrary to law."

There is no dispute that Kral's professional association was a duly incorporated association during the period of controversy. From July 1979 through June 1980, certain laboratory work was done by Mark Peterson Dental Laboratory, Inc. This work was authorized by use of an order form supplied by the laboratory. The form included a portion to be used as a work authorization order. This portion required the dentist's personal signature, his license number and the date, as required by R.C. 4715.09. From the evidence at trial, there appears to be no dispute that all of the work performed by the laboratory was authorized by Kral.

The authorization form additionally provided a place at the top where the following words were followed by blank spaces: "Doctor," "Address," "City," "State," "Zip," "Phone No." and "Area." This portion was for the purpose of designating who was to be billed.

From July 1979 through June 1980, there were five hundred fifty-one work orders. Of these, some bore the notation of "Kral," "Dr. Kral," "Dr. Kral S.D.C.," "S.D.C." or "State Dental Center" on the top portion of the form. The vast majority of the forms were noted "Kral" or "Dr. Kral."

The principal issue raised at the trial was whether the obligation could be said to be an individual one. The trial court held that it was and this court agrees.

The trial court found that some, but not all, of the authorizations contained a notation directing that the billings be made to Kral. The billings were consistently addressed to Kral individually. Although Kral claimed to have informed one or more representatives of the laboratory that the bills should be directed to the professional association, subsequent transactions were unchanged.

Kral operated in this manner for approximately one year, during which time he received an annual salary of $35,000 from the professional association. When Kral terminated the business, he owed the plaintiff $20,874.37. At that time, the pro-

fessional association was without sufficient assets to pay the balance due.

At trial, Kral argued that R.C. 4715.09 and Ohio Adm. Code 4715-5-02 required orders for laboratory work to be in writing and signed by the dentist authorizing the work. Therefore, when he signed these work authorization forms, he merely authorized the work. The laboratory argued that signing for purposes of authorization could have been separated from signing to become obligated by making such a differentiation evident on the work orders. This was not done. The trial court agreed with the laboratory noting that Kral could have signed the work orders for purposes of prescribing the nature of the work to be done, while reciting that the financial obligation being incurred for such services was to be that of the professional association.

Kral argues that in the absence of an express agreement as to whether the individual or the professional association is to be liable for the laboratory work, the professional association should be held responsible.

For Kral to avoid personal liability for the work done by the laboratory, he was required to convince the trial court that he acted in an agency capacity for Dr. Bruce M. Kral, D.D.S., Inc., and not in his individual capacity.

It is undisputed that the work authorization forms did not clearly indicate the corporate entity and that all bills for the laboratory services were directed to Kral individually. However, the rent checks and service checks payable to the plaintiff were issued from the account of Dr. Bruce M. Kral, D.D.S., Inc. Additionally, advertising was done in the corporate name and Mark Peterson admitted that he was aware that the corporation existed.

Does knowledge that a person, such as Kral, is working for a professional association presume in law that such person's work activities are exclusively done on behalf of that association? No. In order to avoid personal liability, the agent must disclose to the party with whom he is dealing (1) the agency relationship, and (2) the identity of the principal. If disclosure is not made, the agent may be held liable for contracts entered into in his own name. *James G. Smith & Associates, Inc.* v. *Everett* (1981), 1 Ohio App. 3d 118.

Here, the plaintiff testified that Kral never told him that the corporation would be responsible for the laboratory bills. Further, the parties did not enter into any agreement with regard to payment for such services. Also, Mark Peterson testified that he believed that Kral was to be personally liable.

From the record on appeal, there is insufficient evidence to find that Kral affirmatively disclosed his agency status. Further, the record supports the trial court's conclusion that there was sufficient credible evidence presented upon which individual liability could be predicated. Thus, the trial court properly found that Kral was personally liable for the services performed by the laboratory. The judgment of the trial court, therefore, must be affirmed. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

As to defendant's claim that he was entitled to a directed verdict either at the conclusion of the laboratory's evidence or at the conclusion of all the evidence, this court disagrees.

Civ. R. 50(A)(4) provides that if there is substantial competent evidence to support the party against whom the motion for a directed verdict is made, upon which evidence reasonable minds might reach different conclusions, the motion for a directed verdict must be denied. *Crawford* v. *Halkovics* (1982), 1 Ohio St. 3d 184.

It is clear that the trier of fact found substantial competent evidence to hold that Kral contracted for the laboratory services in his own name and that he, therefore, was individually liable for the cost of such services.

The assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and MAHONEY, J., concur.