### Gatto Electric Supply Co.
### v.
### Pickup
*[Cite as 6 AOA 236]*

*Case No. 57390*
*Cuyahoga County, (8th)*
*Decided August 2, 1990*

*Christopher J. McCauley, 33 Public Square, 6th Floor, Cleveland, Ohio 44113, for Plaintiff-Appellee.*

*Richard A. Baumgart, 1300 Ohio Savings Plaza, Cleveland, Ohio 44114, for Defendant-Appellant.*

DYKE, J.

In this case the trial court granted judgment against defendant-appellant Lyle G. Pickup individually and not against his solely owned Pickup Electric Company.

Defendant raises five assignments of error.

I. THE TRIAL COURT ERRED IN CONCLUDING THAT THE DEFENDANT WAS PERSONALLY LIABLE FOR THE CLAIMS OF PLAINTIFF IN THAT THE DEBT WAS THAT OF A CORPORATION NOT A PARTY TO THE WITHIN PROCEEDINGS.

II. THE TRIAL COURT ERRED IN ADMITTING PLAINTIFF'S EXHIBIT 'A' INTO EVIDENCE AND TREATING SUCH DOCUMENT AS AN ACCOUNT.

III. THE TRIAL COURT ERRED IN CONCLUDING THAT THE BALANCE OWED WAS $11,833.14.

IV. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR JUDGMENT AND ENTERED A JUDGMENT THAT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

V. THE TRIAL COURT FAILED TO TREAT THE TRIAL AS A DE NOVO HEARING.

A

We will discuss assignments one, three and four together as they all allege that the verdict was against the manifest weight of the evidence.

It is undisputed that defendant-appellant's business was incorporated during the period in controversy. It is also undisputed that plaintiff and defendant had a business relationship prior to the time in controversy when defendant was operating individually and not as a corporation. During the prior business relationship, it was clear between the parties that credit was being extended to defendant individually. Several years after the termination of that initial relationship, plaintiff and defendant resumed another business relationship. It is that second business relationship which is presently at issue. It is also undisputed that after the termination of the

initial relationship and prior to resumption of business with plaintiff, defendant ceased operations of his sole proprietorship and incorporated his business.

Defendant claims that when he renewed his relationship with plaintiff all dealings were done in a corporate capacity. Defendant claims that all payments for goods purchased were made by corporate checks and that it was evident he was signing them in a corporate capacity.

The President of plaintiff corporation, Lou Gatto, testified that after the initial relationship with defendant ended, defendant came to him personally and indicated that he wanted to liquidate his indebtedness and start anew. Gatto testified that defendant, at the time of those discussions, never indicated to him that he had formed a corporation. Gatto stated that the renewal of their relationship was a "handshake deal," between himself and defendant alone. Gatto stated that it was his understanding that he was dealing with the defendant individually; the individual with whom he had always conducted business. Gatto testified that he was never aware of the corporation's existence, although he admitted never seeing the checks defendant sent to the company. The evidence further indicated at trial that plaintiff's invoices were being sent to the defendant at his home address. It was the same billing address that plaintiff used in the earlier relationship.

The principal issue raised at trial was whether the outstanding obligation currently owed could be said to be an individual one. The trial court found that it was and we agree.

In *James G. Smith & Associates, Inc. v. Everett* (1981), 1 Ohio App. 3d 118, the facts were similar to those presently at issue. The court noted that its facts present a common scenario which often gives rise to frequent litigation, i.e., a person incorporates his business, incurs indebtedness in operating the business which subsequently fails, and then is confronted by claims of creditors who do not wish to be limited in their recovery to inadequate or nonexistent corporate assets.

In *Smith* the court stated:

"It is, of course, true that by incorporating his business, a person may escape liability for debts of the business, under certain circumstances. Whether or not he will escape personal liability for debts of the business is most often a question for the law of agency. A corporation, being an artificial person, can act only through agents. When a person incorporates his business and proceeds to conduct business on behalf of the corporation, he is acting as an agent for the corporation. But like any other agent, he may still incur personal liability for debts of the corporation only if he complies with the rules which apply in all agency relationships - he must so conduct himself in dealing on behalf of the corporation with third persons that those persons are aware that he is an agent of the corporation and it is the corporation (principal) with which they are dealing, not the agent individually."

For defendant to avoid personal liability for the merchandise received from plaintiff, he was required to convince the trial court that he acted in an agency capacity for Pickup Electric Company, Inc., and not in his individual capacity. *Mark Peterson Dental Laboratory. Inc. v. Kral* (1983), 9 Ohio App. 3d 163.

*Peterson* held in its syllabus:

"In order to avoid personal liability, an agent must disclose to the party with whom he is dealing (1) the agency relationship, and (2) the identity of the principal. If disclosure is not made, the agent may be held liable for contracts entered into in his own name."

We believe there is insufficient evidence to find that defendant affirmatively disclosed his agency status. The record shows that it was Gatto's decision to allow defendant to once again receive merchandise from his company. The two individuals entered into discussions where it was Gatto's understanding that credit, once again, would be given to defendant individually, as it had been in their previous relationship. At no time, during the discussions with Gatto did defendant every verbally inform him that he had incorporated his sole proprietorship. Further, it is reasonable to infer that defendant knew plaintiff as president of the company would not be receiving and processing his checks which indicated that defendant was acting as a corporate agent.[1]

The record supports the trial court's conclusion that there was sufficient credible evidence presented upon which individual liability could be predicated. Thus, the trial court properly found Lyle Pickup to be personally liable for the merchandise received from plaintiff. The judgment of the trial court must be affirmed. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279.

As to defendant's claim that the damages awarded were unsupported by the evidence, we disagree. At trial defendant admitted reviewing the periodic statements from plaintiff company

and stated he had no reason to believe the charges were incorrect. Defendant failed at trial to *rebut* the propriety of the charges. Further, defendant failed to demonstrate his allegation that finance charges were usury, not contracted for, or incorrectly assessed. The assignments of error are overruled.

## II

In his second assignment of error defendant complains that the trial court erred in admitting Exhibit "A" into evidence. We disagree. Exhibit "A" was properly identified and testimony was presented which indicated that the document was generated in the normal course of plaintiff's business. The trial court did not err in allowing this exhibit into evidence.

Appellants second assignment of error is overruled.

## III

In his fifth assignment of error defendant alleges that the trial proceedings were somehow improper or unfair. We find this assignment of error to be frivolous. Defendant's contention that the trial judge did not conduct a de novo proceeding, and was influenced by the decision of the arbitrators is unsupported. Defendant's claim stems from the fact that the trial judge, prior to opening argument, described for the record the history of the case which she stated included an award to plaintiff by an arbitration panel. Defendant's contention that the judge's mere recitation of the case evidenced a bias is devoid of any merit. We note the record contains no objection by defendant at the time of the judge's recitation. Further, the record indicates that the parties received a fair and impartial hearing in this matter.

This assignment of error is without merit.

*Judgment affirmed.*

VICTOR, J., and CASTLE, J., concur.

---

[1] We note that the record contains a letter that was allegedly sent to Gatto Electric Supply Company six years prior to the transaction at bar. This letter was admitted into evidence at trial. The letter, discovered by defendant's counsel before trial, indicates that defendant announced to all of his business associates, including plaintiff, that he had incorporated. It is not unreasonable to conclude that the trial judge determined its weight to be of little value given the late but convenient discovery of the item and further given plaintiff's denial of the receipt of such letter.

Sitting By Assignment, Judge William H. Victor, Retired, of the Ninth District Court of Appeals and Judge Lyle W. Castle, Retired, of the 12th District Court of Appeals.